UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

UNITED STATES OF AMERICA,

-against-

CASTELL BROWN,

                       Defendant.
---------------------------------------------------------------X

**OPINION & ORDER**
10-CR-675 (SJF)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ JUL 25 2011 ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

Pending before this Court is a motion by defendant Castell Brown ("defendant") seeking, *inter alia*: (1) to suppress evidence recovered during, or as fruit of, (a) his allegedly unlawful arrest and (b) the warrantless search of a certain automobile; (2) to preclude the government from introducing an audio recording at trial or, in the alternative, a hearing pursuant to United States v. Bryant, 480 F.2d 785 (2d Cir. 1973) and Rule 104(a) of the Federal Rules of Evidence; and (3) to compel the government "to search for and turn over" all exculpatory information pursuant to Brady v. Maryland, 373 U.S. 83 (1963) ("Brady material"). For the reasons stated below, defendant's motion is granted to the extent that the government must serve a new and complete copy of the audio recording and transcript upon defense counsel **by 5:00 p.m. on August 10, 2011** and I will conduct an *in camera* review of the audio recording and any transcripts of the audio recording during the next status conference scheduled to be held before me **on September 20, 2011 at 11:15 a.m.**, and the motion is otherwise denied with leave to renew the branch of the motion seeking to compel the government to comply with its disclosure obligations under Brady and its progeny.

1

I.  BACKGROUND

On June 18, 2010, an individual ("the cooperating witness" or "CW"), whose identity is known to the parties, was arrested by police officers employed by the Glen Cove Police Department ("GCPD") in connection with two (2) crack cocaine sales that occurred in March 2010. Later that evening, the CW agreed to cooperate with the GCPD by making telephone calls seeking to obtain narcotics. According to the government, one (1) of the individuals contacted by the CW was known to him as "Cash" and was described by him only as "a black man."

The CW unsuccessfully attempted to contact an individual, known to him only as "Woo," using his cell phone. Thereafter, he successfully contacted "Cash" utilizing the "direct-connect" or "point-to-point" walkie-talkie feature of his Nextel cell phone ("the Nextel phone"). Officers from the GCPD were present and recorded the ensuing communications between the CW and "Cash," during which, *inter alia*: (1) the CW asked "Cash" to sell him two (2) kilograms of cocaine; (2) "Cash" agreed to make the sale; and (3) "Cash" agreed to meet the CW at a specific location, to which they referred during the conversation only as "GC," later that day to complete the transaction. Thereafter, the CW, while still in police custody, went with officers of the GCPD to the Roosevelt Field Mall in Garden City, New York ("the Mall") to meet "Cash" and complete the drug sale transaction.

Upon arriving in the Mall parking lot, the officers and the CW observed a black male, whom the CW identified as "Cash," standing in front of the XSport Fitness at the Mall. Simultaneously, and while still in the presence of the GCPD officers, the CW continued speaking with "Cash" via his Nextel phone. During those conversations, "Cash" indicated to the CW that he was in possession of the drugs sought by the CW and was ready to complete the drug sale

transaction. Pursuant to instructions from the officers, the CW told "Cash" to meet him on the other side of the parking lot to complete the drug sale transaction.

According to the government, defendant was then observed walking to and entering a 1998 Cadillac Eldorado ("the vehicle")[1] in the parking lot of the Mall. As defendant was backing out of the parking spot, officers of the GCPD stopped the vehicle and arrested and handcuffed him, leaving the vehicle running with the keys in the ignition. It is undisputed that the officers did not have a warrant to arrest defendant. Following defendant's arrest, a police dog was utilized to detect the existence of drugs in the vehicle. When the dog "hit" on a location in the rear of the vehicle under the back seat, the interior of the vehicle was searched and two (2) kilograms of cocaine was found secreted underneath the back seat of the vehicle.

Defendant does not specifically deny that the officers used a drug-sniffing dog to locate contraband in the vehicle. According to defendant, he never gave the officers permission or consent to stop him, arrest him, search his person, search the vehicle or remove any items from his person or the vehicle. (Def., Aff., ¶ 5). In his affidavit submitted in support of the motion to suppress, defendant states:

> "Before I got into the car, I was surrounded by numerous police officers who were pointing guns at me and ordered me to put my hands in the air. I did what I was told and then I was grabbed and handcuffed. The police searched my clothing and took my wallet, an Apple i-Phone, and the car keys from me. I was then placed in the back of a police car. The police then used the keys to open the [vehicle] and then began a search * * *."

(Def. Aff., ¶¶ 3-4).

---

[1] The vehicle was owned by defendant's brother, Jaheim Brown, who had given defendant permission to drive it that night. (Affidavit of Jaheim Brown [Jaheim Aff.], ¶¶ 2-3; Def. Aff., ¶ 2).

3

In addition, defendant submits an affidavit from the CW denying that he was ever "a confidential informant" for the GCPD, or other Nassau County law enforcement agency, or a "cooperating witness" for the federal government or Drug Enforcement Agency. (Reply Aff., Ex.) The CW further states:

> "[N]or did I ever meet up with [defendant] on [June 18, 2010]. I did not meet with [defendant] at any given time on June 18, 2010 nor did I see him any time that day, week or month. I was not arrested with [defendant] nor do I know what he is being accused or being locked up with or for."

(Id.)

On September 1, 2010, a grand jury handed up an indictment charging defendant with one (1) count of possession with intent to distribute five hundred (500) grams or more of a substance containing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii)(II) and 18 U.S.C. §§ 3551, *et seq.*

II. DISCUSSION

    A.    Suppression

        1.    Warrantless Arrest

Defendant contends that all physical evidence must be suppressed as fruit of an unlawful arrest because the GCPD did not possess probable cause to arrest him without a warrant.

A warrantless arrest "must be supported by probable cause or else it violates the Fourth Amendment." United States v. Valentine, 539 F.3d 88, 93 (2d Cir. 2008); see also United States v. Cruz, 834 F.2d 47, 50 (2d Cir. 1987) ("A warrantless arrest is justified if the police have probable cause when the defendant is put under arrest to believe that an offense has been or is

4

being committed."); United States v. Fox, 788 F.2d 905, 907 (2d Cir. 1986). "Probable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." United States v. Patrick, 899 F.2d 169, 171 (2d Cir. 1990). "While probable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity,' mere suspicion is not enough." Valentine, 539 F.3d at 93 (quoting Illinois v. Gates, 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)); see also United States v. Gagnon, 373 F.3d 230, 236 (2d Cir. 2004) ("[P]robable cause does not demand the certainty we associate with formal trials. * * * [T]he fact than an innocent explanation may be consistent with the facts as alleged . . . does not negate probable cause." (quotations and citations omitted)); Cruz, 834 F.2d at 50 ("In order to establish probable cause, it is not necessary to make a prima facie showing of criminal activity or to demonstrate that it is more probable than not that a crime has been or is being committed.")

Notwithstanding the existence of some factual disputes with respect to defendant's arrest, the uncontested facts support a finding that probable cause existed to arrest defendant. Specifically, *inter alia*, the officers were present and able to hear the Nextel phone conversations between the CW and "Cash" arranging a drug sale transaction; defendant was at the location where the sale transaction was to occur at the time it was arranged to occur; upon observing defendant at the location set for the drug sale transaction, the CW identified him as "Cash"; and defendant moved from the location where he was first observed, i.e., in front of the XSport Fitness at the Mall, to the vehicle once the CW arranged with "Cash" for the sale transaction to

5

occur at the other side of the Mall parking lot. The officers were justified in relying upon the information provided by the CW, including his identification of defendant as "Cash," *inter alia*, because of his interest in obtaining leniency for the crimes for which he had been arrested that same night and because he supplied the information to the officers face-to-face, as opposed to telephonically or anonymously, and in real time, so that its reliability was readily apparent. See, e.g. Gagnon, 373 F.3d at 236 (finding that the district court improperly discounted the informant's information where the informant gave the information to the agents face-to-face after he was apprehended with drugs, "circumstances that ordinarily would suggest reliability."). Moreover, the CW's information was corroborated, *inter alia*, when defendant was at the location set for the drug sale transaction at the time it was to occur and then moved from the location where he was first observed to his vehicle once the CW told "Cash" that the drug sale transaction would occur on the other side of the Mall's parking lot. Moreover, the CW's affidavit does not deny that the CW spoke with defendant on the date of his arrest, knew defendant or identified defendant to officers at the Mall.

Based upon the totality of the circumstances, the officers had probable cause to believe that defendant was involved in the sale of a narcotic substance, thereby justifying the warrantless arrest of defendant. Since defendant's arrest was constitutionally permissible, the search of his person incident to the lawful arrest was also permissible. See Virginia v. Moore, 553 U.S. 164, 176-77, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008) ("[O]fficers may perform searches incident to constitutionally permissible arrests in order to ensure their safety and safeguard evidence."); Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (holding that a search incident to a lawful arrest may include "the arrestee's person and the area within his

immediate control * * * [i.e.,] the area from within which he might gain possession of a weapon or destructible evidence.") Accordingly, the branch of defendant's motion seeking suppression of the physical evidence seized from his person following his warrantless arrest is denied.

2. Warrantless Search of the Vehicle

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Among the exceptions to the Fourth Amendment's warrant requirement is a search incident to a lawful arrest, including what is commonly known as the "automobile exception." Pursuant to the "automobile exception," a warrantless search of a readily mobile vehicle is constitutionally permissible "when police officers have probable cause to believe that a vehicle contains contraband" or other evidence of a crime. Cruz, 834 F.2d at 51; see also United States v. Hightower, 376 Fed. Appx. 60, 63 (2d Cir. May 6, 2010) (summary order), cert. denied sub nom Pender v. U.S., 131 S.Ct. 342, 178 L.Ed.2d 254 (2010) ("The automobile exception to the warrant requirement permits law enforcement to conduct a warrantless search of a readily mobile vehicle where there is probable cause to believe that the vehicle contains contraband." (quotations and citation omitted)); Gagnon, 373 F.3d at 235 (accord). "[W]hen the police possess probable cause to believe a vehicle contains contraband, 'they may conduct a warrantless search of every part of the vehicle and its contents, including all containers and packages in the vehicle.'" Gagnon, 373 F.3d at 235 (quoting Cruz, 834 F.2d at 51).

7

Defendant's contention that the Supreme Court, in <u>Arizona v. Gant</u>, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) (5-to-4 decision), "essentially eliminated" the "automobile exception" misconstrues the holding in that case. Although the Supreme Court held in <u>Gant</u> that police may "search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search," 556 U.S. 332, 129 S.Ct. at 1719, the Court further held that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." <u>Id.</u> (internal quotations and citation omitted). The Court explained that "[i]n many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. * * * But in others, [citing cases involving arrests for drug offenses], the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." <u>Id.</u> Accordingly, the Supreme Court held in <u>Gant</u> that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search *or* it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. 332, 129 S.Ct. at 1723 (emphasis added); <u>see also</u> <u>Davis v. United States</u>, 131 S.Ct. 2419, 2425 (June 16, 2011) (holding that <u>Gant</u> established a "two-part rule under which an automobile search incident to a recent occupant's arrest is constitutional (1) if the arrestee is within reaching distance of the vehicle during the search, or (2) if the police have reason to believe that the vehicle contains evidence relevant to the crime of arrest." (quotations omitted)). "Where these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another

8

exception to the warrant requirement applies." Gant, 556 U.S. 332, 129 S.Ct. at 1723-24.

Although there was no possibility of access to the vehicle in this case, since defendant had already been handcuffed and placed into police custody at the time the vehicle was searched, the warrantless search of the vehicle was proper because the officers had probable cause to believe that the vehicle contained evidence of the drug-related offense for which defendant was arrested. Specifically, in addition to the facts supporting probable cause for defendant's arrest, the GCPD officers had probable cause to believe that the vehicle contained contraband, i.e., cocaine, based upon, *inter alia*, the conversations between the CW and "Cash" via the Nextel phone, heard by the officers, in which "Cash" indicated his readiness to complete the drug sale transaction with the CW; defendant's association with the vehicle, regardless of whether he was actually in the vehicle, as alleged by the government, or merely approaching the vehicle with the vehicle's keys, as alleged by defendant[2]; the officer's failure to recover any cocaine-like substance during the search of defendant's person incident to his arrest; and the "hit" by the drug-sniffing dog alerting the officers to the presence of drugs in the rear of the vehicle[3]. Accordingly,

---

[2] Whether or not the vehicle was running, defendant does not contend that the vehicle was not mobile. Clearly the vehicle was mobile, as defendant borrowed it from his brother and drove it to the Mall on the date of his arrest.

[3] The Supreme Court has held that "the use of a well-trained narcotics-detection dog–one that does not expose noncontraband items that otherwise would remain hidden from public view, * * *– during a lawful * * * stop generally does not implicate legitimate privacy interests. * * * Any intrusion on [a defendant's] privacy expectations does not rise to the level of a constitutionally cognizable infringement. * * * A dog sniff conducted during a * * * lawful * * * stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." Illinois v. Caballes, 543 U.S. 405, 409-10, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) (internal quotations and citations omitted); see also United States v. Hayes, 551 F.3d 138, 143-44 (2d Cir. 2008) (recognizing that "canine sniffs are recognized as being less intrusive than a typical search used to determine the presence of contraband, * * *;" that "insofar as the presence of narcotics is revealed by a canine sniff, * * *

the branch of defendant's motion seeking to suppress the physical evidence recovered during the search of the vehicle is denied.

B.  Preclusion of Audio Recording

The branch of defendant's motion requesting that the government be precluded from introducing a certain audio recording at trial is granted to the extent that the government shall serve a complete copy of the audio recording and transcript upon defense counsel **by 5:00 p.m. on August 10, 2011** and I will conduct an *in camera* review of the audio recording and any transcripts of the audio recording provided by the parties to determine the audibility of the recording and the accuracy of the transcripts prior to trial pursuant to United States v. Bryant, 480 F.2d 785 (2d Cir. 1973). See United States v. Chiarizio, 525 F.2d 289, 293 (2d Cir. 1975) ("Before either tapes or transcripts are submitted to the jury, the judge should listen to the tapes and examine the transcripts in camera, receiving both sides' objections to the proposed evidence * * *. In cases where the defense and prosecution disagree as to the contents of the tape, the proper procedure is for the jury to receive transcripts of both sides' versions." (citation omitted)). The audio recording, transcripts and any specific objections thereto shall be produced during the next status conference scheduled to be held before me **on September 20, 2011 at 11:15 a.m.** Following an *in camera* review of the audio recording and any transcripts, I will determine whether any portions of the recording are in fact inaudible or otherwise unintelligible and, if so,

---

any interest in possessing contraband cannot be deemed legitimate;" and that "the expectation that certain facts will not come to the attention of the authorities is not the same as an interest in privacy that society is prepared to consider reasonable." (internal quotations, alterations and citations omitted)). Accordingly, the dog sniff of the vehicle did not violate the Fourth Amendment.

whether "the unintelligible portions are so substantial as to render the recording as a whole untrustworthy" and, therefore, inadmissible at trial, Bryant, 480 F.2d at 790; see also United States v. Arango-Correa, 851 F.2d 54, 58 (2d Cir. 1988), bearing in mind the "clear preference [in this Circuit] for the admission of recordings notwithstanding some ambiguity or inaudibility, as long as the recordings are probative." Arango-Correa, 851 F.2d at 58.

### C. Brady Materials

Due to the publicly reported issues involving the Nassau County Police Department Forensic Evidence Bureau Laboratory (the "Nassau Crime Lab"), defendant seeks disclosure from the government, *inter alia*, of: (1) "specific information about the collection, vouchering, securing, and storage of the substance recovered by the [GCPD] which is alleged to be cocaine, * * *;" (2) "specific information as to what chemicals and reagents were used in the testing of the alleged cocaine in the Nassau Crime Lab, which machines were used in the testing, the exact dates of the tests, the standards used in the tests, the names of each individual who conducted the tests, the 'bench notes' and raw data of the tests as well as the final reports of the testing results, the exact procedures used during the testing of the alleged cocaine, and the maintenance records of the machines used in the testing, including specifically whether and when the machines were cleaned and sterilized prior to the tests conducted on the alleged cocaine in this case;" (3) "the data recovered from the search of the Defendant's i-Phone, * * *;" and (4) "other records or information related to the recent Nassau Crime Lab scandal which has not yet been made public, or is otherwise in the possession or within reach of the Government, * * *." (Def. Mem., pp. 21-22) (emphasis in original).

11

"Under Brady and its progeny, 'the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is "material" either to guilt or to punishment.'" United States v. Paulino, 445 F.3d 211, 224 (2d Cir. 2006) (quoting United States v. Jackson, 345 F.3d 59, 70 (2d Cir. 2003) (internal quotations and citation omitted)). "To establish a Brady violation, a defendant must show (1) that the evidence at issue is 'favorable to the accused, either because it is exculpatory, or because it is impeaching'; (2) the 'evidence must have been suppressed by the [government], either willfully or inadvertently': and (3) 'prejudice must have ensued.'" Id. (quoting Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).[4]

The Second Circuit has long held, however, that:

> "A prosecutor is not constitutionally obligated to obtain information *dehors* his files for the purpose of discovering information which defense counsel can use in impeaching the credibility of a prosecution witness. His omission to do so does not place him at the risk of being charged with unfairness of the trial; such failure to make a check does not amount to denial of due process in the constitutional sense. Particularly is this true where * * * the evidence is equally available to the defense, which chose not to investigate before the trial the public sources thereof."

Morgan v. Salamack, 735 F.2d 354, 358 (2d Cir. 1984). "[E]vidence is not considered to have been suppressed within the meaning of the Brady doctrine if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence." Paulino, 445 F.3d at 225 (quoting United States v. Gonzalez, 110 F.3d 936, 944 (2d Cir. 1997)); see also United States v. Payne, 63 F.3d 1200, 1208 (2d Cir. 1995) (accord).

"An individual prosecutor is presumed, however, to have knowledge of all information

---

[4] For the purposes of this motion, the materiality of the disclosure sought is presumed. Moreover, prejudice can only be ascertained after trial.

gathered in connection with *his office's* investigation of the case and indeed 'has a duty to learn of any favorable evidence known to others acting *on the government's behalf* in the case, including the police.'" United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998) (quoting Kyles v. Whitley, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)) (emphasis added); see also Payne, 63 F.3d at 1208 ("The individual prosecutor is presumed to have knowledge of all information gathered in connection with the government's investigation.") "Nonetheless, knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor, for the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require [courts] to adopt 'a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis.'" Avellino, 136 F.3d at 255 (quoting United States v. Gambino, 835 F.Supp. 74, 95 (E.D.N.Y. 1993), aff'd, 59 F.3d 353 (2d Cir. 1995)).

Moreover, the government is only required to disclose Brady materials "in time for its effective use at trial," and not upon request. United States v. Douglas, 525 F.3d 225, 245 (2d Cir. 2008) (quoting United States v. Coppa, 267 F.3d 132, 145 (2d Cir. 2001)). Accordingly, and based upon the government's representation that it "is aware of and will comply with its obligation to produce exculpatory information or material within the scope of Brady * * *, and its progeny," (Govt. Opp., p. 8), the branch of defendant's motion seeking to compel the government to provide Brady materials is denied with leave to renew upon a demonstration that the government has failed to comply with its disclosure obligations under Brady and its progeny. In fact, at the last status conference on July 14, 2011, the government specifically indicated that

13

the analysis of the substance alleged to be cocaine had not been performed by the Nassau Crime Lab.

III. CONCLUSION

For the foregoing reasons, defendant's motion is granted to the extent that the government must serve a new and complete copy of the audio recording and transcript upon defense counsel **by 5:00 p.m. on August 10, 2011** and I will conduct an *in camera* review of the audio recording, any transcripts of the audio recording and any objections thereto during the next status conference scheduled to be held before me **on September 20, 2011 at 11:15 a.m.**, and the motion is otherwise denied with leave to renew the branch of the motion seeking to compel the government to provide Brady materials upon a demonstration that the government has failed to comply with its disclosure obligations under Brady and its progeny.

SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Court

Dated: July 25, 2011
Central Islip, New York